1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

INK PROJECTS, LLC,

Plaintiff(s),

v.

RUBEN KASPER, LLC, et al.,

Defendant(s).

Case No. 2:23-CV-1568 JCM (BNW)

ORDER

Presently before the court is plaintiff Ink Projects, LLC's (d/b/a Perma Blend) motion for a preliminary injunction.  (ECF No. 9).  The defendants (Ruben Kasper, LLC; Ruben Estrellado; and Marvin Etrellado) responded in opposition (ECF No. 29), and Perma Blend replied (ECF No. 32).  Also before the court are the defendants' anti-SLAPP motion (ECF No. 33) and motion to dismiss under Rule 12(b)(6) (ECF No. 37).  These motions are fully briefed.

I.      **Background**

This case is about a business deal gone sour.  Perma Blend brings four claims against the defendants: (1) breach of contract, (2) tortious interference with advantage business relationships, (3) unfair and deceptive trade practices, and (4) defamation.  (ECF No. 2).  This case is in federal court on diversity jurisdiction.  (*Id.* at 2–3).  The court recounts Perma Blend's allegations below.

Perma Blend manufactures "high-quality pigments, inks, and related products for use by professional permanent makeup artists."  (*Id.* at 3).  Defendant Ruben Kasper, LLC (d/b/a Brow Daddy) is a designer and manufacturer of brow products for professional makeup artists.  (*Id.* at 4, 10).  Perma Blend and Brow Daddy entered into an agreement to create a product co-branded with both their trademarks and artwork.  (*Id.*).  Their products were sold online on sites powered by Shopify (an e-commerce platform).  (*Id.* at 13).

James C. Mahan
U.S. District Judge

1    The agreement ran for one-year terms, automatically renewing each year unless either party

2    terminated the agreement by providing written notice of non-renewal.  (*Id.*).  The collaboration

3    was initially "very successful and profitable," but a dispute arose during the 2023 to 2024 term

4    when Brow Daddy attempted to terminate the agreement.  (*Id.* at 4, 6–7).  Perma Blend argues that

5    Brow Daddy's termination was ineffective, citing the provision allowing termination of the

6    agreement only for "cause" under certain circumstances.  (*Id.* at 9).  As Brow Daddy's stated

7    reason for termination was pretextual, Perma Blend rejected Brow Daddy's termination notice.

8    (*Id.* at 9–10).

9    In response, Brow Daddy posted on social media, questioning the safety of Perma Blend's

10   products.  (*Id.* at 10–12).  Brow Daddy then filed trademark infringement notices with Shopify,

11   resulting in Shopify removing all co-branded products from its stores, "making it impossible for

12   Perma Blend and its affiliates" to sell the co-branded products.  (*Id.* at 13).  Brow Daddy also

13   contacted Perma Blend's vendors, demanding that they cease production of any co-branded

14   products.  (*Id.* at 14).  Perma Blend alleges economic damage and reputational harm as a result of

15   Brow Daddy's actions.

16   **II.    Preliminary Injunction**

17   Perma Blend seeks a preliminary injunction directing the defendants to:

18           withdraw trademark infringement notices issued to Shopify,
     resulting in the removal of Perma Blend's products from its own
19           website, and the websites of its distributors, and (ii) restraining
     [d]efendants from (a) engaging in a social media campaign
20           impugning Perma Blend and its products, through social media posts
     or otherwise, (b) submitting false take-down notices to online
21           marketplaces and sellers of Perma Blend products, (c) contacting
     Perma Blend's distributors and vendors in an effort to disrupt Perma
22           Blend's business, (d) engaging in trade libel, and (e) continuing its
     breach of the parties' Co-Branding Agreement.
23

24   (ECF No. 9, at 1–2).  Defendants oppose the injunction.[1]  (ECF No. 29).

25

26   _____

27       [1] The defendants moved for an order temporarily sealing their opposition to Perma Blend's
     motion for permanent injunction, arguing that good cause exists because their opposition contains
28   sensitive and confidential commercial information.  (ECF No. 27, at 3).  The motion is unopposed.
     The court finds that good cause exists to grant the motion.

**James C. Mahan**
**U.S. District Judge**

Federal courts sitting in diversity apply the relevant state substantive law and federal procedural law unless state law conflicts with a valid federal statute or procedural rule. *E.g.*, *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 666 (9th Cir. 2003) (quoting *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)); *MRO Commc'ns, Inc. v. Am. Tel. & Tel. Co.*, 197 F.3d 1276, 1282 (9th Cir. 1999). "To carry out the thorny task of identifying whether a law is substantive or procedural, we generally use an 'outcome-determination test,' which asks whether applying federal law instead of state law would 'significantly affect' the litigation's outcome." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 839 (9th Cir. 2020). "Thus, the outcome of a case in federal court should generally be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Id.* (citations omitted).

Preliminary injunctive relief is therefore not available in federal court on diversity "if state law clearly rejects the availability of that remedy." *Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988). On the other hand, Rule 65 still governs the procedure for requesting a preliminary injunction in federal court, and "just because state law authorizes an injunction doesn't mean a federal court sitting in diversity can issue one." *Id.* at 646; *Jain v. Unilodgers, Inc.*, No. 21-CV-09747-TSH, 2024 WL 478030, at *2 (N.D. Cal. Feb. 7, 2024) (*citing Sonner*, 971 F.3d at 841–44).

Rather, "traditional principles governing equitable remedies in federal courts…apply when a party requests" equitable relief under state law "in a diversity action." *Sonner*, 971 F.3d at 844. Accordingly, a preliminary injunction "may be issued in a diversity case only if applicable state law would permit it and an injunction would conform to traditional principles governing equitable remedies in federal courts." *Jain*, 2024 WL 478030, at *2.

The forum state is Nevada, but the parties' agreement contains a choice-of-law clause that reads, "This Agreement shall be governed by the laws of the State of Delaware, without regard to its conflict of laws principles." (ECF No. 2-1, at 8). The court does not decide whether Nevada or Delaware law controls, or whether either state's laws permit a preliminary injunction, because it finds that an injunction is not appropriate under federal principles governing equitable remedies.

James C. Mahan
U.S. District Judge

- 3 -

Preliminary injunctive relief is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689–690 (2008) (internal citations omitted). The Supreme Court has instructed that courts must consider the following elements in determining whether to issue a preliminary injunction: (1) a likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008). The test is conjunctive; the party seeking the injunction carries the burden of persuasion for each element.

The plaintiff must make a threshold showing of likelihood of success on the merits and irreparable harm, but a stronger showing on one element may offset a weaker showing on another. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–33 (9th Cir. 2011). Courts employ a sliding scale: "serious questions going to the merits and a balance of hardships that tips sharply toward the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotations omitted).

The court finds that Perma Blend failed to carry its threshold burden of showing a likelihood of irreparable injury. Perma Blend alleges vague and conclusory losses of "reputation, goodwill, customer relationships, and artist relationships." (ECF No. 9, at 16). It provides no evidence that such losses are likely, and fails to adequately explain how such losses will occur as a result of Brow Daddy's actions. Its argument focuses almost entirely on loss of "income stream." (*Id.* at 16–17).

As the court explained in a prior order, economic damages, which may be remedied with a later judgment for monetary damages, do not constitute *irreparable* harm. *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980); (ECF No. 17, at 1). A preliminary injunction may be granted if economic injuries are accompanied by "the infliction of intangible injuries" such as loss of reputation or goodwill. *Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 519 (9th Cir. 1984). But the plaintiff must show that such an injury is "*likely* in the absence of an injunction," not merely possible. *Winter*, 555 U.S. at 22. "[A] finding of reputational harm may not be based on pronouncements

James C. Mahan
U.S. District Judge

- 4 -

1    that are grounded in platitudes rather than evidence." *Titaness Light Shop, LLC v. Sunlight Supply,*

2    *Inc.*, 585 F. App'x 390, 391 (9th Cir. 2014) (mem).

3         Perma Blend has provided the court with specific factual allegations, and evidence, of

4    Brow Daddy's actions, but not how those actions will result in harm other than loss of revenue.

5    Perma Blend's briefs are almost entirely silent on this issue.  The court therefore denies its request

6    for a preliminary injunction.

7    **III.    Choice of Law**

8         As a threshold matter to resolving the pending motions to dismiss, the court must determine

9    the applicable substantive law.  The agreement contains a choice-of-law clause but the parties

10   dispute the enforceability and scope of this clause in disjointed arguments across three separate

11   motions.  Neither party adequately addresses the other's arguments—or the applicable law.  The

12   court therefore denies the pending motions to dismiss *without* prejudice, as it cannot rule on these

13   motions until it resolves the conflicts-of-law question.[2]  The court orders the parties to file

14   supplemental briefs on this issue but makes the following preliminary conclusions of law.

15        "Federal courts sitting in diversity must apply the forum state's choice of law rules to

16   determine the controlling substantive law." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th

17   Cir. 2005) (citations and quotations omitted).  Nevada generally follows the Restatement (Second)

18   of Conflict of Laws when resolving "choice-of-law questions involving contracts…." *Progressive*

19   *Gulf Ins. Co. v. Faehnrich*, 327 P.3d 1061, 1063 (Nev. 2014).  Under the Restatement (Second),

20   "the expressed intention of the parties as to the applicable law in the construction of a contract is

21   controlling if the parties acted in good faith and not to evade the law of the real situs of the

22   contract." *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Inv'rs*, 603 P.2d 270, 273

23   (Nev. 1979).

24        The court will find that the parties acted in good faith if the "situs fixed by the agreement"

25   has a "substantial relation with the transaction." *Progressive Gulf Ins. Co. v. Faehnrich*, 327 P.3d

26

27        [2] It is well established that the district courts have the inherent power to control their
     dockets and manage their affairs; this includes the power to strike or deny motions to streamline
28   motion practice and promote judicial efficiency.  *Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d
     402, 404–05 (9th Cir. 2010).

James C. Mahan
U.S. District Judge

- 5 -

1061, 1063 (Nev. 2014).  To determine whether a given situs satisfies the substantial relationship test, Nevada considers the following factors from section 188 of the Restatement: (1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the parties' domicile, residence, nationality, place of incorporation, and place of business. *Sotirakis v. United Serv. Auto. Ass'n*, 787 P.2d 788, 790 (Nev. 1990).

The court then determines whether applying the parties' chosen law "offends a fundamental…policy" of the forum (or other interested) state. *Progressive Gulf Ins. Co.*, 327 P.3d at 1063.  The parties' chosen law will only be found unenforceable to "protect a fundamental policy of the state…with a materially greater interest than the state of the chosen law in the determination of the particular issue." *Id.*

The parties have not adequately briefed this issue.  In their supplemental briefs, the parties are instructed to discuss whether the agreement's choice-of-law clause is enforceable under Nevada law.

If the choice-of-law provision is deemed enforceable under Nevada law, the court must decide which state's law determines the *scope* of the choice-of-law clause.  Courts appear split on this issue.  Some courts hold that, having decided that a clause is enforceable, an inquiry into the clause's scope is one of contract construction and interpretation, which logically should be governed by the law selected in the clause itself.  *See Narayan v. EGL, Inc.*, 616 F.3d 895, 898 (9th Cir. 2010) ("California…ordinarily examines the scope of a choice-of-law provision in a contract under the law designated in that contract."); *Milanovich v. Costa Crociere, S.P.A.*, 954 F.2d 763, 767 (D.C. Cir. 1992).  Other courts "consider the scope of a contractual choice-of-law clause to be a threshold question like the clause's validity," and therefore apply forum law.  *Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 333 (2d Cir. 2005) (collecting cases).

As this court is sitting in diversity, it must apply the approach employed by Nevada courts, but it does not appear that Nevada courts have expressly addressed this issue.  Where the state's highest court has not decided an issue of law, the district court's task is to "predict" how that court

James C. Mahan
U.S. District Judge

would rule. *Hayes v. Cnty. of San Diego*, 658 F.3d 867, 871 (9th Cir. 2011). This court is persuaded that Nevada courts would apply Nevada law to determine the scope of the parties' choice-of-law clause. In *DeSage v. AW Financial Group, LLC*, the Nevada Supreme Court cited—and followed—the approach that instructs "that the law of the forum state governs interpretation of certain clauses regardless of an expressed choice of law." 461 P.3d 162, 2020 WL 1952504, at *2 (2020) (*citing* John F. Coyle, *The Canons of Construction for Choice-of-Law Clauses*, 92 WASH. L. REV. 631, 681 (2017).[3]

In their supplemental briefs, the parties are instructed to discuss, under Nevada law, which of Perma Blend's claims fall within the scope of the agreement's choice-of-law clause. The parties must also discuss whether the agreement's choice-of law clause binds *all* of the defendants. The parties are reminded that they must provide competent legal authority to support their positions and the court will not perform legal work on their behalf. *See U-Haul Co. of Nevada v. Gregory J. Kamer, Ltd.*, No. 2:12-CV-00231-KJD, 2013 WL 4505800, at *2 (D. Nev. Aug. 21, 2013) ("[T]he burden of representation lies upon [the parties], and not upon the [c]ourt…the idea that courts will not perform the work of representing parties is clear.")

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that plaintiff Ink Projects, LLC d/b/ Perma Blend's motion for preliminary injunction is DENIED. (ECF No. 9).

IT IS FURTHER ORDERED that the defendants' motion to seal is GRANTED. (ECF No. 27). The Clerk of the Court is INSTRUCTED to maintain ECF No. 29 under seal. If the defendants wish to unseal ECF No. 29, they may file a motion requesting it.

IT IS FURTHER ORDERED that the parties file supplemental briefs on the issue of choice-of-law, consistent with the foregoing. Specifically, the court ORDERS the defendants to

---

[3] In *Canons*, the author explains that some forums "will bring their own canons of construction to bear on the issue of a choice-of-law clause's scope even if the contract states that it is to be interpreted and construed in accordance with the laws of another jurisdiction." Coyle, *supra*, at 680–81. The Nevada Supreme Court cites this approach positively and uses it to apply its own laws to determine the enforceability of forum-selection clauses, even though a choice-of-law clause within the same agreement was found enforceable. *Desage*, 2020 WL 1952504, at *2.

James C. Mahan
U.S. District Judge

file a brief, consistent with the court's instructions in *this* order, by June 21, 2024.  Plaintiff Perma Blend MUST file a response to that brief, within 21 days, also consistent with the court's instructions in *this* order.

IT IS FURTHER ORDERED that the defendants' motions to dismiss (ECF Nos. 33 and 37) be denied WITHOUT prejudice as to their ability to renew these motions after the court makes a finding on the relevant substantive law in this case.

DATED May 28, 2024.

UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge

- 8 -