UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

INK PROJECTS, LLC,

Plaintiff,

v.

RUBEN KASPER, LLC, RUBEN ESTRELLADO, and MARVIN ESTRELLADO,

Defendants.

Case No. 2:23-cv-01568-JCM-BNW

**ORDER**

Presently before the court are the parties' supplemental briefs regarding the choice of law in this case. (ECF Nos. 57, 62). For the reasons stated below, the court finds that the choice-of-law clause in the parties' agreement is unenforceable, and thus Nevada law applies to all claims.

## I. Background

This case stems from a business deal gone sour between two companies in the makeup industry. Ink Projects ("Perma Blend") manufactures "high-quality pigments, inks, and related products for use by professional permanent makeup artists." (ECF No. 2, at 3). Defendants Ruben Kasper, LLC, Ruben Estrellado, and Marvin Estrellado (collectively d/b/a "Brow Daddy") are designers and manufacturers of brow products for professional makeup artists. (*Id.* at 4, 10). Perma Blend and Brow Daddy entered into an agreement to create a product co-branded with both their trademarks and artwork. (*Id.*).

After three years of collaboration, Brow Daddy attempted to terminate the agreement. (ECF No. 2, Ex. 5). But Perma Blend rejected the notice. (ECF No. 2, Ex. 6). Shortly after the rejection, Brow Daddy posted pictures on its social media account, with captions that questioned the safety of Perma Blend's products. (ECF No. 2, at 10–12). Brow Daddy then filed trademark infringement notices with the online platform Shopify. (*Id.* at 13).

The notices resulted in Shopify removing all the parties' co-branded products, "making it impossible for Perma Blend and its affiliates" to sell the co-branded products. (*Id.*). Brow Daddy

also contacted Perma Blend's vendors, demanding that they cease production of any co-branded products. (*Id.* at 14). Perma Blend now sues Brow Daddy for breach of contract, tortious interference, unfair and deceptive trade practices, and defamation.

Brow Daddy filed motions to dismiss this lawsuit. (ECF Nos. 33, 37). However, the court dismissed the motions without prejudice because it determined that it could not consider the motions without knowing the applicable substantive law. The parties' co-branding agreement contained a choice-of-law clause stating that agreement "shall be governed by the laws of the State of Delaware, without regard to its conflict of law principles." (ECF No. 2, Ex 1 at 8). Despite the clause, the parties dispute which state's law should control this action. Accordingly, the court ordered the parties to submit supplemental briefs explaining which state's law should govern.

In its brief, Perma Blend argues that Delaware law applies because the co-branding agreement is valid, and enforceable. (ECF No. 62, at 3-4). Perma Blend also supports its argument by stating that Brow Daddy waived its ability to object to the clause's validity. (*Id.* at 2). As a result, Perma Blend believes that Delaware law should be applicable to all its claims and all the defendants in the case. (*Id.*).

On the other hand, Brow Daddy asserts that Nevada law should govern. (ECF No. 57, at 3). Brow Daddy argues that the choice-of-law clause is unenforceable under Nevada law because Delaware has no substantial relationship to the agreement and the clause violates a "fundamental policy of Nevada." (*Id.* at 6-7).

Alternatively, Brow Daddy contends that even if the clause is found to be enforceable, its scope is restricted to the breach of contract claim and does not extend to Perma Blend's tort claims. (*Id.* at 9).

Brow Daddy also argues that the individual defendants listed (Ruben Estrellado and Marvin Estrellado) were not signatories to the co-branding agreement, so the choice-of-law clause does not bind them. (*Id.* at 3).

## II. Legal Standard

Where the court's jurisdiction relies on diversity, the court must apply the forum state's choice-of-law rules. *Abogados v. AT & T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) (citation omitted).

Nevada courts adjudicating contractual disputes apply the substantial-relationship test to determine choice-of-law. *Williams v. United Servs. Auto. Ass'n*, 849 P.2d 265, 266 (Nev. 1993). "Under this test, the state whose law is applied must have a substantial relationship with the transaction and the transaction must not violate a strong public policy of Nevada." *Id.*; *see Pentax Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995).

Nevada courts consider five factors to determine "whether a state possesses a substantial relationship with a contract: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Williams*, 849 P.2d at 266.

## III. Discussion

### A. The Choice-of-Law Clause Is Not Enforceable Under Nevada Law

Although the parties chose to have Delaware law apply to the interpretation of the branding agreement, it is difficult to see how Delaware has a substantial relationship with the agreement after considering the *Williams* factors. *See id.* Accordingly, the clause is unenforceable under Nevada law. *See id.*

The first and second *Williams* factors consider the place of contracting and where the contract was negotiated. *See id.* Here, Nevada was the place where the agreement was contracted, negotiated, and signed, so two factors weigh against Delaware and favor Nevada. (ECF No. 57, Ex. 1, at 2).

The third *Williams* factor considers the place of contract performance. 849 P.2d at 266. Brow Daddy asserts that it designed the palette's packaging in its Nevada warehouse. (ECF No. 57, at 7). Additionally, Brow Daddy states that it performed the marketing and social media required under the co-branding agreement in Nevada. (*Id.*). Perma Blend does not dispute that Brow Daddy's work happened in Nevada, nor does Perma Blend show that it completed its marketing work elsewhere. (*See generally* ECF No. 62). Thus, the third *Williams* factor also favors the application of Nevada law. *See Williams*, 849 P.2d at 266.

Factor four is the location of the contract subject matter. *Id.* The subject matter of the agreement is the custom palette of ink colors co-branded with Perma Blend and Brow Daddy

trademarks and artwork. (*See* ECF No. 1, at 4, Ex. 1, at 2). The only location that the agreement and the parties refer to is that the palettes would be sold online. (*See* ECF No. 1, at 4). The palettes were intended to be sold to customers nationwide through online platforms, including customers in both Delaware and Nevada. (*See* ECF No. 2, at 13); *see also Yeomans v. World Fin. Grp. Ins. Agency, Inc.,* 485 F. Supp. 3d 1168, 1178 (N.D. Cal. 2020) (finding that selling products online marketed to customers nationwide). That said, this factor does not clearly favor one state.

The final factor considers the parties' place of incorporation and business. *See Williams*, 849 P.2d at 266. Delaware's only link to the action is that Perma Blend is incorporated in Delaware. (ECF No. 62, at 7). However, Brow Daddy is incorporated in Nevada, so the final factor weighs equally towards Nevada as much as Delaware. *See Williams*, 849 P.2d at 266.

Perma Blend fails to dispute Nevada's substantial relationship with the agreement. It argues that Brow Daddy waived any choice-of-law objection. (*See* ECF No. 62, at 2-3). However, after review, the court fails to see such a waiver.

Brow Daddy has continuously insisted that the application of Delaware law was exclusively restricted to the agreement terms only, not to any claims arising from the agreement. (*See* ECF No. 28 at 13; ECF No. 37, at 9). Although Brow Daddy did not expressly dispute the clause's validity, it was under no obligation to do so. The authorities that Perma Blend cites do not establish a waiver. (*See* ECF No. 62, at 3). Perma Blend's waiver argument fails.

Brow Daddy also asserts that applying Delaware law would conflict with Nevada's anti-SLAPP laws and thus offend "Nevada's fundamental policy of protecting its citizens from frivolous lawsuits over their speech." (ECF No. 57, at 9). However, because the court has already found the clause unenforceable, it need not address whether a choice-of-law clause that may preclude an anti-SLAPP action violates Nevada public policy.

In sum, the court finds that Delaware does not have a substantial relationship with the agreement, so the conflict-of-law clause is unenforceable. *See Williams*, 849 P.2d at 266. That said, Nevada *does* have a substantial relationship, so Nevada law will govern Perma Blend's claims. *Id.*

B. The Choice-of-Law Clause Does Not Extend to Tortious Claims

Because the court finds the choice-of-law clause to be unenforceable, it does not encompass Perma Blend's claims. However, even if the clause were enforceable, it still would not extend to the tort claims.

Under Nevada law, if the "language of the contract is clear and unambiguous ... the contract will be enforced as written." *Davis v. Beling*, 278 P.3d 501, 515 (Nev. 2012) (citing *Ellison v. C.S.A.A.*, 797 P.2d 975, 977 (Nev. 1990). The choice-of-law clause here is not clear and is ambiguous on the clause's scope. It states, "This Agreement shall be governed by the laws of the State of Delaware, without regard to its conflict of law principles." (ECF No. 2, Ex. 1 at 8). The plain terms of the clause do not encompass which law governs over a party's tortious conduct.

To determine whether a tort claim would fall within the scope of the choice-of-law clause, Nevada's three-step framework should be applied, (1) "whether the parties intended for tort claims to be governed by a choice-of-law clause in a related contract between them," (2) "whether the tort claims relate to the interpretation of the contract," and (3) "whether the tort claims involve the same operative facts as a parallel breach-of-contract claim." *Nail v. Lens.com*, Case No. 2:24-cv-01149-JAD-EJY, 2024 WL 4477012, at *2 (D. Nev. Oct. 11, 2024 (citing *Tuxedo Int'l Inc. v. Rosenberg*, 251 P.3d 690, 698 (Nev. 2011)).

Here, all three steps weigh against applying the choice-of-law clause to Perma Blend's tort claims. *See id*. First, neither party presents any evidence supporting that the parties intended to have the clause govern tort claims. Nor do Perma Blend's tortious claims relate to the co-branding agreement's terms of use or even invoke the contractual relationship between the parties. (*See* ECF No. 2, at 16-18; *Nail*, 2024 WL 4477012, at *3 (using similar analysis to conclude that a conflict-of-law clause with "governed by" language does not mean that the provision applies to all causes of action). And lastly, the tort claims do not stem from the same facts as the breach of contract claim. (*See* ECF No. 2). Perma Blend's breach of contract claim stems from Brow Daddy's attempt to terminate the co-branding agreement, but the tort claims stem from Brow Daddy's social media posts and communication with various vendors. (*See id.* at 15-18).

In conclusion, the choice-of-law clause does not govern the tortious claims.

C. The Choice-of-Law Clause Regarding Ruben Estrellado and Marvin Estrellado

Because the court finds the choice-of-law clause to be unenforceable, that determination applies to all defendants. This includes Ruben Estrellado and Marvin Estrellado.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the agreement's choice-of-law clause is UNENFORCEABLE and that Nevada law shall apply to all claims and over all defendants.

IT IS FURTHER ORDERED that because the clause is unenforceable, it cannot be extended to encompass the tort claims.

Dated this16th day of November, 2026.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE